243338 Columbia Casualty Co v. State Auto Mutual Ins Co at all. Mr. Rappes, you may proceed for the appellant. Good morning. Good morning, Your Honors. Steve Rappes for both appellants. I'd like to reserve three minutes for rebuttal, if I could, Your Honors. Just for ease of reference, I'll refer to both appellants just as State Auto. And unless you tell me differently, I'll assume you're generally familiar with the facts and move into the argument section. The district's court summary judgment in favor of the E&O insurers in this case was based on two erroneous holdings. First, that the July 2017 demand letter was not a triggering claim as defined in the Columbia policy. The second was that State Auto incurred no covered loss as defined in the Columbia policy. So let's start with the triggering claim issue. The definition that's at issue of a triggering claim is a written demand for monetary damages against an insured. It's not reasonably disputable that the July 27 demand letter is a written demand for monetary damages. And the district court, Your Honors, effectively conceded that point. Where the district court focused and where its analysis ultimately fails is its conclusion that the July 2017 demand letter from the decedent's estate doesn't make any demand against State Auto. Specifically, the district court says that the $5 million demand was made to settle the claims the estate has against the WAVES, which was the underlying insured, not any claims the estate may have against State Auto. But we can see from the July 2017 demand letter that that's just not correct. The ray line of that letter specifically refers to your insured. It purports to put the insured and the carrier on notice of our new demand. The letter focuses extensively on bad faith. It asserts that all the prerequisites to bad faith under Florida law have been far exceeded and that the policy limits weren't previously, and the fact that the policy limits weren't previously tendered is shocking. And the context of that letter is a conditional bad faith demand against State Auto. It's even more clear when it's read in conjunction with the previous letter that was sent in 2016. There's an even more detailed discussion about State Auto's bad faith if it didn't settle. The district court and the E&O insurers here say that the letter was not a claim because it didn't offer to settle or resolve any claims against State Auto. We think it does do that. But even if it didn't, claim is defined as a demand for monetary damages against an insured. It's not defined as a settlement offer. So the letter plainly was a demand for monetary damages against State Auto. The district court was required to draw all reasonable inferences from the language of that letter in State Auto's favor as the non-moving party. But it instead erroneously drew them in the E&O insurer's favor. The district court secondly erroneously holds that the 2017 demand letter wasn't a claim against State Auto because it only threatened a bad faith lawsuit against State Auto that was never brought. But the district court improperly adds a lawsuit requirement to the definition of claim that simply doesn't exist. The only requirement for a claim is a written demand for monetary damages against State Auto. And secondly, perhaps even more importantly, the district court failed to acknowledge the conditional nature of the estate's claim against State Auto at the time that it was made. The July 2017 demand letter essentially says, State Auto, if you don't pay us $5 million now to settle and we get an excess of limits verdict at trial, which we will, Florida bad faith law makes you responsible for that full amount. And the demand was conditional at that time because the estate couldn't yet legally enforce it against State Auto under Florida law. But both demand letters, the 2016 and 2017, make abundantly clear that the estate fully intended to enforce those rights if the condition later was satisfied. And it was. So is it a conditional claim then, as opposed to a claim? It is. It was conditional at the time it was made, in July 2017. Is that conditional claims covered by the E&O policy? The conditional claim is covered by the E&O policy once the event occurs that makes it a claim. Once the event occurs, okay, don't you need an event to have a claim as opposed to, I mean, isn't it speculative until you've got the event? I don't think it's speculative if you look at the language, but in any event. If you drive negligently tomorrow and hit me, I'm going to sue you and demand $5 million. But if it's something that happens tomorrow and may not ever happen, how can you have a claim at that point for something that might or may not occur? Well, it was conditional at the time because it could not be enforced under Florida law at the time. Once the verdict was handed down. But what if the verdict was not handed down? That's the other thing. I mean, that's the issue of loss, I think, too. But you say conditional claims are covered by the policy. I guess that's your position, right? We certainly say that conditional claims are covered once the event that makes them no longer conditional occurs. Okay, so it's not covered at the time of the 2017 letter, but it's covered at the time. It could not have been enforced in 2017 because the estate had no right under Florida law to sue state auto. They would say that's a potential claim. Let's call it conditional, potential, whatever you want to call it. But there was an event that later occurred in December 2017 that made that an actual claim. And we see that happen all the time. Claims are initially made. There's some portion of that that doesn't make it fit the policy language. The insurer accepts it as a notice of potential claim. Then once that event occurs, it becomes a claim. All right, how about loss? I mean, our argument is that you voluntarily paid the amount of the bond, that you put up the bond yourself, that it was a voluntary act by state auto, and then state auto paid the bond amount. There was no adjudication. Basically, your brief says, yes, we could have litigated the issue of whether we acted in bad faith or not, but it was likely a losing defense. And because we would likely lose in a trial on whether we acted in bad faith or not, we decided to voluntarily pay anyway. Well, the carrier says, no, we're not responsible for voluntary payments. We're only responsible to pay what is legally obligated by the insurer that we covered. What's wrong with that argument? Your Honor, when there's a statute that says that if you don't use good faith to settle an underlying claim, and the court comes back, and there's an excess of limits verdict, you have a direct right against... You have a cause of action, but it doesn't mean you have a legal... It doesn't make a legal obligation of it. It gives them a cause of action to sue you, but you can sue, and then you can litigate whether state auto acted in bad faith or not. And basically, state auto said, okay, we're going to concede, I guess, we acted in bad faith. We're not going to litigate it because we might lose that. So they say there's not a loss, that it was a voluntary decision by you to admit liability without consulting your insurance company, and that your admission is really what put you on the hook. It was a legally enforceable... It was enforceable, but it was not strictly liable. You didn't have strict liability. It was not certain that you would have liability. In fact, your brief mentions it. It says there are chances of winning a bad faith claim were small or nil. Anyway, I could read actually what you say, but you admit that you had a chance to perhaps prevail if there was a defense on a bad faith lawsuit. And there are bad faith lawsuits all the time, by the way. Just because there's an excess verdict doesn't mean you're automatically liable. But that's kind of the position you took. If you look at the Brush-Wellman case, all it says is under Ohio law, you only need to have a legally enforceable right to have a loss. And that's all you need. And that's supported by the majority of cases across the country. A legally enforceable right is a loss? Even if it's not legally recognized or put to judgment, just because they have a cause of action, you have a loss? Legally obligated to pay under Brush-Wellman means an enforceable right. If somebody has a forcible right, then you're legally obligated to pay just because they have a cause of action. I don't think so. Correct. I'll look at the Ohio case. And that's reflected in cases across the country. And if you look at their policy language, it sort of bears that out. In other words, and we identified this distinction in our brief, if you have to have some kind of adjudication of a loss, then the policy also covers settlement. Well, if you have to have an adjudication in order for there to be a loss, you can't ever be covered for settlement. It's illusory coverage. And so those two things don't fit together. And we raised that point in our briefing on summary judgment. District Court never addressed it, Your Honor. I mean, when the insured settles on his own without involving his insurance company, he kind of does it at his own peril. And I suppose you can have an evidentiary hearing or adjudication whether the unilateral settlement by the insured was reasonable under the circumstances. But here, you didn't have that. And I don't think you even requested it. You're just saying it's automatic that if – I mean, your argument is it's automatic under the law that if there is an excess judgment that that is bad faith and therefore your insurance company has to pay for it because it's, as a matter of law, bad faith. I don't think that's what the law is, that's all. Well, it certainly was a fact question. If you look at the situation that state auto was facing, that case was unwinnable. And so if we assume they have to adjudicate that to a judgment and possibly get – and even have to pay attorney's fees, all that kind of thing, it makes no sense. At some point, state autos got to be able to settle that case without waiving its rights to insurance coverage. And that was where the enforceable right that Brush-Wellman talks about comes into play. Forcing a party to take a case to full adjudication when it's almost certain it's going to lose makes no sense. It certainly is against public policy favoring settlements. And it's just – it's simply not supported by the case law that we cite. I think I'm out of time unless you have more questions for me. I have none. Thank you, Your Honors. Good morning, Your Honors. Good morning. If you may please the court, Arthur McColgan, counsel for Ace American Insurance Company. I'll be arguing this morning on behalf of both Ace and Columbia Casualty Company. Columbia Counsel would like to reserve one minute at the end of my argument time. All right. You know, does this matter hinge on whether the coverage under the errors and omissions policy, reasoning that a claim may not have been made against state auto under the policy, does this case hinge on what constitutes a claim under the policy and whether the claim was properly made? Is that what this is reducible to? That's part of it, Your Honor. The July 2017 letter that state auto received made allegations of a potential bad faith claim in the future. But it wasn't a claim directly against state auto that would be covered by the policy. The estate in that letter made a $5 million claim against the Waves, the underlying insured and the owner of the hotel, to settle all claims against the Waves. As plaintiff's attorneys often do, they made noise about a potential bad faith claim down the road. However, in this case, at the time they sent this letter to the Waves, they had no ability, they had no standing, as counsel just admitted, they had no standing to pursue a bad faith claim against state auto. So it couldn't be a claim against state auto at that time. It also expired in 10 days, didn't it? That was going to be my other point, Your Honor. That was the other point. He said, okay, it was a contingent claim, but it fulfilled or it ripened, I guess, at the time of the judgment. But it could not have because it expired within 10 days. Exactly right. The judgment didn't come down until early December 2017. But as you said, the letter itself, by its own terms, expired on August 8, 2017, months before that judgment. So how that letter could morph into a claim after it had already expired is beyond comprehension here, I think. The other issue, besides there not being an actual claim, and the MGIC case that we cite in our brief discusses why it's not a claim under the policy. Besides that, as you discussed earlier, Judge Griffin, there's not a loss under the policy. They assumed liability by getting the bond to pay the full judgment before any claim was ever made against them. There's no duty to defend here either. It's just a duty to pay under the E&O policy, right? Right. The policy actually had a $5 million retention so that state auto was responsible for its own defense. At first I was a little confused because usually we see insurance cases, they argue that an insurance company was put on notice of a claim by something like this and they had to defend. They had to get into the case, defend the insured, because the duty to defend is for claims or potential claims. And here the coverage is much more limited than what we usually see because there's no duty to defend. And this letter I think would trigger a duty to defend a bad faith claim, but that's not what we're looking at. Is that accurate? That's correct, Your Honor. And the other thing that I want to point out is this letter that they contend is the claim that the July 2017 letter wasn't provided to Columbia for three years. So it wasn't provided to Columbia. But the attorney was hired by Columbia, right, that's defending their insurer. Right, but the attorney hired by Columbia to, I'm sorry, was hired by state auto to defend the waves. Right, okay. So it was three years later, which is a year and a half after the policy had already expired, is when state auto provided Columbia with this letter. State auto never provided that letter to Ace until this litigation. So to now contend that that letter that they never provided their insurers is the claim calls into question their whole delay in saying, well, this letter is the claim. The assumption of liability under the bond is again why there's no loss here. There was no legal obligation to pay the judgment against the waves. It was a contractual one. And our policy requires a loss to be a settlement, I'm sorry, damages, settlements, or judgments for which the insured is legally obligated to pay. And that's not what we have here. Does Ohio require insurance companies to post a bond to appeal a judgment? I mean, I didn't think insurance companies had to post bonds. I thought they were deemed to be nationally secure. I don't believe that's a requirement either, Your Honor. I thought that was odd. And so their obligation arises from the bond and not the judgment. Exactly, Your Honor. And, Your Honor, the one other point I'll make is that there were three other grounds that Columbia and Ace moved for summary judgment on in the district court, which the district court did not feel the need to rule upon because it found in our favor on the claim issue and on the loss issue. We have reasserted those grounds in this court and seek affirmation of summary judgment in our favor on those grounds as well, which this court is allowed to do as set forth in the letter that we recently sent to the court. With that, Your Honor, Columbia and Ace will rest on the briefs and on the record evidence unless you have additional questions. I apparently not. Thank you. You may proceed. Oh, thank you, Your Honor. So just to address a couple of those points, first let's talk about the expiration of the letter. If you look at the letter, what expired was the $5 million demand. The conditional claim, if we get a verdict, a judgment against you, that doesn't expire. And it would make no sense to read that letter any other way because the trial in which they would get the excess verdict wasn't scheduled until months after that expiration date. It's very common for plaintiffs to put an expiration date on a particular dollar amount because they might want to demand more before trial. They don't want to be bound by that amount. But it certainly doesn't negate the part of the letter that says if we get an excess of limits judgment against you, we're going to enforce that against you. The MGIC case, that case, I believe one of your honors asked about that case. That actually works in our favor because what that case said, it involved a bank and its officers, and there was a regulatory case against them. The regulators did not demand any money from the officers and directors, only from the bank. And the officers and directors were the only insureds. The bank was not. And so what the court said was you have to allege more than wrongdoing. You also have to demand money from an insured. There has to be some kind of demand for something. But here, that's exactly what the July 2017 demand letter was. It was a demand both against the insured, which was the waves, and the insurer, which was state auto. So that case actually cuts in our favor. The other thing I would mention on the appeal bond, it's never been state auto's position that the appeal bond is the basis of its liability. It's Florida bad faith law that's the basis of its liability. Why did you post an appeal bond? Under Florida law, and it's Florida law that controls in the underlying case. Under Florida law, if you want to stave off execution on judgment while an appeal is pending, you have to post a bond. That's Florida law. I don't think that's disputed here. I mean, okay, this is, okay. All right. Any other questions for me, Your Honor? No, apparently not. Okay. Thank you so much. I appreciate your consideration. Thank you.